UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARL GENBERG, | : | |
|     Plaintiff | : | CIVIL ACTION NO. |
| | : | |
| VS. | : | |
| | : | |
| CERAGENIX CORPORATION, *f/k/a* | : | |
| *Osmotics Pharma, Inc*., CERAGENIX | : | |
| PHARMACEUTICALS, INC., and | : | |
| DR. REDDY'S LABORATORIES, INC. | : | |
|     Defendants. | : | APRIL 15, 2010 |

# COMPLAINT

The Plaintiff, Carl Genberg ("Genberg"), files this Complaint against Ceragenix Corporation *f/k/a Osmotics Pharma, Inc.* ("Ceragenix Corp")*,* Ceragenix Pharmaceuticals, Inc. ("Ceragenix Pharma"), and Dr. Reddy's Laboratories, Inc. ("DRL, Inc.") and states the following:

## NATURE OF THE ACTION

This is an action brought by Genberg against the defendants, Ceragenix Corp, Ceragenix Pharma, (collectively "Ceragenix"), his former employer, for equitable relief in aid of arbitration seeking: (1) an Order pursuant to Title 9 U.S.C. Section 4 of the Federal Arbitration Act mandating that Ceragenix arbitrate the dispute according to the terms of the parties' negotiated Employment Agreement; (2) Orders granting temporary

and preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure; and (3) an Order Pendent Lite pursuant to Rule 64 of the Federal Rules of Civil Procedure and Connecticut General Statute Section 52-422 (authorizing pre-arbitration award attachments) to attach certain funds due to be paid by DRL, Inc. to Ceragenix as well as any and all funds and assets in Ceragenixs' possession in an amount not less than $1.5 million dollars so as to secure the satisfaction of the arbitration award when rendered and confirmed.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this controversy pursuant to 28. U.S.C. Section 1331 as it arises under the Federal Arbitration Act, 9 U.S.C. Section 1, et seq. (specifically 9 U.S.C. Section 4), ancillary jurisdiction as well as diversity jurisdiction pursuant to 28 U.S.C. §1332 as the citizenship of the parties is diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs.

2. Venue is proper is this district as Ceragenix maintains an office in Guilford, Connecticut and routinely conducts business in Connecticut.

3. Venue is proper as to DRL, Inc. as it also routinely conducts business in Connecticut.

PARTIES

4. At all times material to this Complaint, Genberg is an individual residing in Las Vegas, Nevada and a citizen of the State of Nevada.

5. Ceragenix Corp is a Colorado corporation formerly known as Osmotics Pharma, Inc. with its principal place of business at 1444 Wazee Street, Suite 210, Denver, Colorado 80202. Ceragenix Corp currently has 5 employees, one of whom (the Vice President of Business Development) operates a home office in Guilford, Connecticut and routinely conducts business on behalf of Ceragenix Corp from that location.

6. Ceragenix Corp is a wholly-owned subsidiary of Ceragenix Pharma and is a citizen of the State of Colorado.

7. Ceragenix Pharma is a Delaware corporation with its principal place of business at 1444 Wazee Street, Suite 210, Denver, Colorado 80202.

8. Ceragenix Pharma is a Securities and Exchange Commission ("SEC") reporting company whose common shares are listed on the OTC Bulletin Board under the symbol CGXP.OB.

9. Ceragenix Pharma is a "holding company" and its only operating entity is Ceragenix Corp.

10. At all times material to this Complaint, Ceragenix Corp has been the "alter ego" and a mere instrumentality of Ceragenix Pharma.

11. DRL, Inc. is the United States pharmaceutical marketing arm of Dr. Reddy's Laboratories, Limited which is one of the leading generic pharmaceutical companies in the world with its headquarters in Hyderabad, India.

12. DRL, Inc. is a wholly-owned subsidiary of Dr. Reddy's Laboratories Limited which markets and sells dermatology and other products throughout the United States through a dedicated sale force and by other means.

13. DRL, Inc. routinely conducts business within the State of Connecticut.

14. DRL, Inc.'s principal place of business is located at 200 Somerset Corporate Boulevard, 7th Floor, Bridgewater, New Jersey 08807.  Defendant RDL is a citizen of the State of New Jersey.

## STATEMENT OF CLAIMS

15. Pursuant to an Employment Agreement *(See exhibit A attached to the Demand for Arbitration ("Arbitration Demand") attached hereto as Exhibit 1 ),* entered into by and between Genberg and Ceragenix Corp on or about January 1, 2005, Genberg was employed by Ceragenix Corp as its Senior Vice President Research and Development.

16. By memo transmitted on March 3, 2010 *(See exhibit __ attached to Arbitration Demand attached hereto as Exhibit 1)* and letter dated March 4, 2010 *(See exhibit __ attached to Arbitration Demand attached hereto as Exhibit 1)*, Genberg brought to Ceragenix's Board of Directors' attention certain practices of the Board that violated SEC proxy rules and a stock manipulation scheme involving senior management.

17. In response, by letter dated March 26, 2010, Genberg was advised by Steven Porter ("Porter"), Chairman and Chief Executive Officer of Ceragenix Pharma, that he was being terminated purportedly for "Just Cause" based on an alleged "willful breach of fiduciary obligation." *(See exhibit B attached to the Arbitration Demand attached hereto as Exhibit 1).*

18. Genberg denies that his actions constituted "Just Cause" for his termination.

19. Pursuant to the terms of the Employment Agreement *(exhibit A attached to the Arbitration Demand attached hereto as Exhibit 1)*, in the event Ceragenix Corp terminates Genberg's employment, purportedly for "Just Cause", Ceragenix is obligated to pay: (a) all filing fees and arbitrators' costs; and (b) Genberg his Base Salary until the issuance of an arbitration award affirming Ceragenix Corp's actions. *(See exhibit A, paragraph 9 attached to the Arbitration Demand attached hereto as Exhibit 1).* In

addition, if Genberg prevails in the arbitration that his termination was without "Just Cause", he shall also be entitled to recover his reasonable attorney's fees, out-of-pocket expenses incurred in the arbitration, and his severance benefits.  At the time of Genberg's termination, his Base Salary was $230,000 per annum.

20.	As Genberg disputes that his termination was for "Just Cause", the Employment Agreement requires that: (a) a panel of 3 arbitrators rule whether the termination was for "Just Cause"; and (b) all controversies relating to the Employment Agreement be submitted for arbitration to the American Arbitration Association ("AAA") pursuant to its rules then in effect. *(See exhibit A at paragraph 9 and 12 attached to the Arbitration Demand attached hereto as Exhibit 1). .*

21.	According to AAA rules, when an employment agreement requires arbitration of disputes before the AAA but does not specify which set of the AAA's procedural rules shall apply, then the Employment Arbitration Rules shall apply.  Rule 1 of the AAA's Employment Arbitration Rules provides, in relevant part, that:

> *The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules.*

22. Rule 32 of the AAA's Employment Arbitration Rules provides, in relevant part, that:

> *A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.*

23. On April 1, 2010, Genberg sent Ceragenix a "Notice of Demand for Immediate Payment" in which he advised Ceragenix that upon his termination, under the Colorado's Wage Claim Act, he was entitled by statute to "immediate" payment of his earned and vested bonuses for the years 2007 and 2008 (awarded in 2008 and 2009, respectively), as well as accrued vacation pay, unreimbursed business expenses and the full amount of his Base Salary until an arbitration award is rendered.

24. Despite the foregoing, Genberg was only paid through date of termination, March 28, 2010.

25. On April 9, 2010, Genberg filed the Arbitration Demand with the AAA and served copies on Ceragenix. As the Demand for Arbitration has just been filed, no arbitrators have been selected and it is unlikely that an arbitration award will issue within the next 10 - 12 months.

26. Among the items of compensation sought by Genberg in the Arbitration Demand, are:

(a) Amounts due and owing under Colorado's Wage Claim Act (together with statutory penalties), which sum exceeds $300,000;

(b) Base Salary from the date of termination through the date of the arbitration award (estimated to be one year's salary or $230,000);

(c) Severance benefits for termination "without cause", in the approximate amount of $475,000, in accordance with his Employment Agreement *(See exhibit A, paragraph 9 attached to the Arbitration Demand attached hereto as Exhibit 1)*;

(d) Compensation for damage to reputation and emotional distress;

(e) Exemplary damages (recoverable under Colorado common law for wrongful termination of a "whistleblower" employee; and

(f) Reasonable attorneys' fees.

27. On March 31, 2010, Ceragenix publicly announced through an 8-K filing with the SEC that Ceragenix: (a) will require additional funding within the next 30 days; (b) was delinquent on two technology licenses due to non-payment of past due amounts; and (c) owed over $10 million pursuant to promissory notes issued to three hedge funds. *(See Exhibit 2 attached).*

28. In the 8-K announcement, Ceragenix claimed that it hoped to stay in business for more than 30 days by consummating a loan transaction in the amount of $3 million dollars with an unnamed entity, and that Ceragenix and the entity had reached an

agreement in principle but that finalization of the transaction required certain concessions from the three hedge funds who are owed over $10 million by the Ceragenix.

29. Upon information and belief, the unnamed entity in the 8-K filing is DRL, Inc. If the agreement is consummated, it is likely to occur within the next 30 days.

30. Also on April 9, 2010, Genberg filed with the U.S. Department of Labor, Occupational Health and Safety Administration ("OHSA") a complaint pursuant to Section 1514(a) of the Sarbanes-Oxley Act for wrongful dismissal as a proximate result of Genberg's "whistleblower" actions *(See Exhibit 3, without original exhibits, attached)*. OHSA has launched an investigation of Genberg's complaint.

31. Based on the information contained in the 8-K announcement, Ceragenix is imminently at risk of becoming insolvent, in danger of financial collapse and lack the funds to pay the Arbitration filing fees and arbitrators' costs let alone an award, if any, in Genberg's favor following the arbitration panel hearing.

32. On information and belief, once Ceragenix is in possession of the $3 million from RDL, Inc. it will be quickly dissipated to pay past due obligations and ongoing expenses of operation. At such time as Genberg prevails in his arbitration proceeding some months hence there will be insufficient funds remaining in Ceragenix's coffers to pay the arbitration award.

33. Even if Ceragenix is able to consummate the $3 million loan transaction with RDL, Inc., Ceragenix Corp and Ceragenix Pharma will likely still be insolvent and subject to a continuing "going concern" clause by their independent auditors, as Ceragenix will still have debts that far exceed their assets and will lack the ability to operate as a going concern as viewed by its independent auditors.

FIRST COUNT:  *(Piercing the Corporate Veil).*

34. Ceragenix Pharma should be held responsible for Ceragenix Corp as they are essentially the same business entity and indelibly mingled.

35. Ceragenix Pharma is a "holding company," its only operating entity is Ceragenix Corp, and it is the sole owner of Ceragenix Corp "wholly owned subsidiary".

36. At all times material to this Complaint, Ceragenix Corp has been the "alter ego" and a mere instrumentality of Ceragenix Pharma.

37. Ceragenix Pharma has dominated the operations and practice of Ceragenix Corp, as illustrated by the fact that the letter of termination was sent by Porter on behalf of Ceragenix Pharma.  *(See exhibit B attached to the Arbitration Demand attached hereto as Exhibit 1)*.

38. Ceragenix Pharma's exercise of complete control and dominion over Ceragenix Corp gives rise to the claims alleged by Genbert, and were the proximate cause of the damages suffered by Genbert.

39. Not only is there unity of interest and ownership between Ceragenix Corp and Ceragenix Pharma, but the independence of such entities has long been ignored and has effectively ceased to exist, as illustrated by the following examples:

(a) The annual reports Ceragenix Pharma files with the SEC are joint submissions by Ceragenix Pharma and Ceragenix Corp;

(b) There are no agents of Ceragenix Pharma other than those who are also agents of Ceragenix Corp;

(c) All employees of Ceragenix Corp were issued business cards in the name of Ceragenix Pharma; and

(d) Ceragenix Corp does not have any operations independent of Ceragenix Pharma.

40. Accordingly, it would defeat justice to permit Ceragenix Pharma to escape liability, and the Court should therefore hold Ceragenix Pharma liable on such equitable principles.

SECOND COUNT:  *(Pre-Arbitration Award Attachment Pursuant to Conn. Gen. Stat. § 52-422 and Rule 64 of the Federal Rules of Civil Procedure).*

41. Rule 64 (a) of the Federal Rules of Civil Procedure provides, in relevant part, that:

> *At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of a potential judgment.*

42. Connecticut General Statutes § 52-422 authorizes pre-arbitration award attachments and provides, in relevant part, that:

> *At any time before an award is rendered pursuant to an arbitration under this chapter, the superior court ... upon application of any party to the arbitration, may make forthwith such order or decree, issue such process and direct such proceedings as may be necessary to protect the rights of the parties pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed.*

43. Genberg has filed his Demand for Arbitration with the American Arbitration Association *(See Exhibit 1 attached)*.

44. There is probable cause that an arbitration award in an amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims, or set-offs, will be rendered in favor of Genberg.

45. There is a reasonable likelihood that Ceragenix's current and continued insolvency *(even if Ceragenix receives the $3 million loan from RDL, Inc.)* constitutes "extraordinary circumstances" and that, in the absence of judicial intervention, Ceragenixs' assets will be irretrievably disposed of, leaving Genberg with no ability to

12

recover damages he may be awarded. All to Genberg's immediate and irreparable injury for which there is no adequate remedy at law.

46. To secure the sum of $1.5 million, Genberg seeks an order *Pendete Lite*, directing the following prejudgment remedy attachment sufficient to secure the amount sought:

(a)  an attachment on any and all assets held by Ceragenix Corp and/or Ceragenix Pharma up to the amount of $1.5 million; and

(b)  an attachment on any and all assets held by DRL, Inc., and any other third parties, that are to be paid or advanced to Ceragenix Corp or Ceragenix Pharma for its benefit.

and that such funds be deposited with the Clerk of this Court until such time as the arbitration panel, once selected, decides to modify, vacate or continue such Order pending the results of the arbitration proceeding.

THIRD COUNT:  *(Request for Temporary, Preliminary and Permanent Injunctive Relief).*

47. Unless Ordered by this Court, any funds that may be payable to Ceragenix or in Ceragenix's possession will be quickly dissipated and will not be available to satisfy the arbitration award that is likely to be issued following a full hearing on the merits.

48. Genberg has a substantial likelihood of success on the merits of his arbitration claims and the rendering of an award in the amount of at least $1.5 million in his favor.

48. The absence of funds to satisfy Genberg's arbitration award would render such an award meaningless, all to Genberg's irreparable and immediate injury for which there is no adequate remedy at law.

49. Ceragenix's current and continued insolvency (even if they receive the $3 million loan for RDL, Inc.) constitutes "extraordinary circumstances" which warrant the granting of the requested injunctive relief.

50. Genberg requests an Order seeking to:

(a) attach any and all assets held by Ceragenix Corp and/or Ceragenix Pharma up to the amount of $1.5 million; and

(b) attach any and all assets held by DRL, Inc., and any other third parties, that are to be paid or advanced to Ceragenix Corp or Ceragenix Pharma for its benefit

and that such funds be deposited with the Clerk of this Court until such time as the arbitration panel, once selected, decides to modify, vacate or continue such Order pending the results of the arbitration proceeding

FOURTH COUNT:  *(Order Mandating Arbitration According to the Terms of the Employment Agreement).*

51. The Employment Agreement *(See exhibit A attached to the Arbitration Demand attached hereto as Exhibit 1)* by and between Genberg and Ceragenix Corp is an agreement that affects interstate commerce and is subject to the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

52. On April 1, 2010, Genberg, by written notice served upon Ceragenix, demanded immediate payment of the full amount of his Base Salary through March 31, 2010 *(See exhibit E attached to the Arbitration Demand attached hereto as Exhibit 1)*, pursuant to the parties Employment Agreement.  *(See exhibit A, paragraph 9 attached to the Arbitration Demand attached hereto as Exhibit 1).*

53. Despite such demand, Ceragenix has failed to make such payment.

54. Ceragenix has not and will not, unless Ordered by this Court, pay: (a) the filing fees and arbitrators' costs required by the American Arbitration Association; or (b) the Base Pay due to Genberg on a biweekly basis until such time as an arbitration award is issued by the panel.

54. Pursuant to Title 9 U.S.C. Section 4 of the Federal Arbitration Act, Genberg seeks an Order from this Court mandating that Ceragenix Corp comply with the provisions of the Employment Agreement.

15

WHEREFORE, the Plaintiff seeks the equitable relief as described in paragraphs 40, 46, 50, and 54 above together with his reasonable attorneys' fees and costs and such further relief as this Court may deem just and proper.

Dated at Darien, Connecticut this 15th day of April, 2010.

        THE PLAINTIFF
        CARL GENBERG

BY:                 /S/
        MARK R. CARTA (ct06645)
        Rucci, Burnham, Carta & Carello, LLP
        30 Old Kings Highway South, Post Office Box 1107
        Darien, Connecticut 06820
        (203) 899-3300 (Phone) – (203) 655-4302 (Facsimile)
        mcarta@rucciburnham.com